IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

HARRY LEROY GANT,

                Plaintiff,

v.                                               OPINION and ORDER

MARIE ROETHLISBERGER and KRISTINE         23-cv-164-jdp
THOME,[1]

                Defendants.

---

Plaintiff Harry Leroy Gant, proceeding without counsel, alleges that defendants at Oakhill Correctional Institution (OCI) deprived him of medical care for his serious knee problems. Gant alleges that defendants continued to provide the same ineffective treatment in response to his complaints of worsening pain and other symptoms. Gant is proceeding on Eighth Amendment medical care and Wisconsin-law medical negligence claims.

Defendants move for summary judgment. Dkt. 23. The evidence shows that defendants provided several forms of treatment for Gant's knee problems based on their medical judgment and that they adjusted the treatment in response to his concerns. There is no evidence that defendants thought that their treatment of Gant's knee problems was ineffective. Nor is there any evidence that defendants were responsible for any delay in Gant's treatment. These considerations warrant summary judgment on Gant's federal claim. As for the medical negligence claims, Gant didn't disclose any expert witness to establish the standard of care, and

---

[1] Defendant Roethlisberger was formerly known as Marie Herweijer. Roethlisberger is to be recaptioned under the name Marie Roethlisberger. Defendant Thome is to be recaptioned under the name Kristine Thome.

there's no evidence that defendants themselves could provide testimony at trial to meet that requirement. Summary judgment is appropriate on Gant's medical negligence claim. I will grant defendants' motion and dismiss the case.

## UNDISPUTED FACTS

I begin with a word about Gant's summary judgment opposition. On summary judgment, this court requires the moving party, here defendants, to set out a statement of proposed facts with citations to admissible supporting evidence. See the attachment to Dkt. 16. The party opposing the motion, here Gant, must state whether each fact is disputed, and if it is, support the opposition with a citation to admissible evidence. The court also requires the parties to support every factual proposition with a clear citation to admissible evidence, and it cautions the parties that it won't search the record for evidence. All litigants must comply with the court's orders and rules. *See Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 349 (7th Cir. 2020).

Gant didn't respond to defendants' proposed findings of fact. Gant filed a brief in opposition, which contains evidentiary citations, and which he signed under penalty of perjury. Dkt. 33. Even if a party hasn't strictly complied with the court's summary procedures, I can treat a verified brief in opposition as a declaration if its factual statements are mostly based on a litigant's personal knowledge. *Pearson v. Borchert*, No. 22-cv-343-jdp, 2024 WL 4039791, at *1 (W.D. Wis. Sept. 4, 2024). But Gant's brief in opposition is argumentative and mostly not based on his personal knowledge. Furthermore, I cannot find much of the evidence that Gant cites, and the evidence that I can find doesn't put defendants' proposed findings of fact into genuine dispute. Gant also submits declarations from two prisoners, Dkt. 34 and Dkt. 35,

but the facts they seek to establish—that Gant had a painful knee condition—are not in dispute. The bottom line is that I will accept defendants' proposed findings of fact as undisputed. *See Allen-Noll,* 969 F.3d at 349; *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[A] failure to respond by the nonmovant as mandated by the local rules results in an admission.").

With that background, the following facts are undisputed.

Gant was incarcerated at Oakhill Correctional Institution (OCI) from June 2021 until he was paroled on September 30, 2022. Defendant Marie Roethlisberger was a physician at OCI, and defendant Kristine Thome was a nursing supervisor and health services unit (HSU) manager.

On June 21, 2021, Roethlisberger saw Gant for multiple concerns, including degenerative joint disease of his knees. Roethlisberger noted that Gant had a history of steroid injections and had received his most recent injection in March 2021. Grant reported that the March injection was helpful though he felt that it had started to wear off. Roethlisberger discussed with Gant the importance of weight loss and ways to achieve that goal. She encouraged Gant to use naproxen for pain on his worst days, and she ordered a low bunk and follow-up visit. Roethlisberger believed that Gant was managing his pain following his most recent steroid injection and didn't need another injection at that time.

On September 17, 2021, nondefendant nurse Deflorian told Roethlisberger about a health services request (HSR) from Gant in which he complained of knee pain and requested a steroid injection. Roethlisberger ordered Deflorian to refer Gant to orthopedic specialist Dr. Ellen O'Brien. (I dismissed Gant's claims against O'Brien on screening the complaint.) The order was placed that day, and it contained a request for a steroid injection.

3

On September 25, 2021, Gant submitted an HSR in which he stated that he fell down the library steps and injured his right knee and left leg. Thome received the HSR on September 26 and saw Gant that day. Thome typically didn't provide medical care directly to prisoners because her position was primarily administrative, but she saw him because the HSU was short on staff that day.

Thome noted minor swelling on the outside of Gant's knee and that he was able to bend it with minor discomfort. Gant reported that he had been using naproxen and acetaminophen since the fall, and he stated that his pain was less that day. Gant told Thome that he worked as a custodian and felt that he could continue working without difficulty. Thome advised Gant to continue using those medications as needed for pain and to elevate his leg and use ice as needed. Thome applied an Ace wrap to Gant's left knee and provided an ice bag.

On October 10, 2021, Thome received two HSRs in which Gant complained of serious knee pain. Dkt. 28-1 at 56–57. That day, Thome responded that Gant was scheduled to see his provider soon. *Id.* at 56.

On October 15, 2021, Roethlisberger saw Gant for complaints of pain stemming from his fall. Gant told Roethlisberger that there had been plans for him to receive knee replacements before he arrived at OCI but that he had to lose weight first. Gant said that the fall aggravated his arthritis and he requested a steroid injection. Roethlisberger diagnosed Gant with a mild left ankle sprain and worsening of his degenerative joint disease in his left knee. Roethlisberger ordered physical therapy to evaluate Gant's ankle and O'Brien to evaluate his knee. Roethlisberger also noted that she had already requested a steroid injection in the prior referral to O'Brien. Three days later, an appointment was scheduled with O'Brien.

4

O'Brien saw Gant on October 22, 2021. Gant told O'Brien that he had end-stage degenerative joint disease and was previously told that he needed total knee replacement but had to weigh under 300 pounds. Gant said that he weighed around 275 pounds, so O'Brien referred him to an outside orthopedist for a surgical evaluation. Gant also said that he wasn't sure when he would be paroled.

After the visit, O'Brien emailed Thome. Dkt. 28-1 at 20. O'Brien wrote that Gant was a candidate for total knee replacement. *Id.* O'Brien also wrote that Gant was in DOC custody on a parole violation and was going before the parole board in early 2022 and could be leaving DOC custody. *Id.* O'Brien wrote that Gant would be living in Indianapolis, and she asked Thome to contact social services to see if they could help transition care to the Veterans Administration in Indianapolis. *Id.* Thome responded four days later, writing that HSU staff would assist in the transition. *Id.*

On November 5, 2021, Roethlisberger referred Gant to University of Wisconsin (UW) Orthopedics for a surgical evaluation of his left knee. Five weeks later, nondefendant Dr. Samuel Lake saw Gant. Gant told Lake that his most recent steroid injection had helped his knee pain greatly, and he requested an injection at that visit, which he received. Lake recommended non-steroidal anti-inflammatory drugs and Tylenol, and to follow up for repeat injections as needed but no earlier than three months. Lake said that Gant was a surgical candidate but that his injections were still working.

In mid-December 2021, Roethlisberger documented Lake's assessment. Roethlisberger also told nondefendant nurse Miller to discuss Gant's orthopedic consultation at his upcoming appointment.

In about a week, Roethlisberger saw Gant for multiple medical issues. Gant reported that his knee pain had improved following his recent injection, and she advised him to tell her or HSU staff if he wanted another injection in three months. Roethlisberger also discussed the benefits of weight loss.

In early January 2022, nondefendant nurse Kufel told Roethlisberger that Gant had complained about left knee pain. Roethlisberger instructed HSU to work on scheduling Gant to see an orthopedist in March 2022 for a steroid injection.

On April 11, 2022, Lake saw Gant, who said that he wanted to try a different injection. Lake administered a Synvisc One injection to supplement lubricating fluid in both knees, and advised Gant to return in six months. Around the same time as the April 11 visit, Roethlisberger changed his naproxen prescription to ibuprofen at Gant's request.

On April 12, 2022, Roethlisberger saw Gant for multiple medical issues, including his degenerative joint disease. Roethlisberger noted that he had recently received a Synvisc injection and would follow up with the orthopedist in six months. Roethlisberger also noted that Gant had ibuprofen and Tylenol for pain, and she ordered Gant to follow up with her.

On April 17, 2022, Gant submitted an HSR in which he stated that the Synvisc injection wasn't effective and that he was having excruciating knee pain. Dkt. 28-1 at 54. Gant asked if there was a "more effective pain cure for his knees." *Id.* Upon receiving the HSR a day later, Thome responded that Gant had an upcoming appointment with Roethlisberger, whom he could talk to about medication. *Id.*

That appointment took place on May 13, 2022. Gant asked Roethlisberger to follow up with the orthopedist because his knee hadn't responded to the Synvisc injection.

Roethlisberger asked HSU staff to see if Gant's six-month follow-up visit could be moved up to the next available time, and she noted that he was scheduled to be released in June 2022.

In mid-September 2022, Roethlisberger saw Gant for multiple unrelated medical issues, and he didn't mention knee pain at that visit. Gant couldn't get in to see the orthopedist before he was released later that month. Gant received knee replacement surgery in April 2023. Dkt. 4 at 2.

I will discuss additional facts as they become relevant to the analysis.

## ANALYSIS

### A. Eighth Amendment medical care claims

Gant contends that defendants provided treatment that they knew was ineffective for his knee pain. In particular, Gant contends that, even though he received injections and pain medications, defendants refused to vary their treatment in response to his complaints of worsening pain. Gant also contends that Thome ignored his requests for help for his knee pain.

The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish a medical care claim, Gant must show that he had an objectively serious medical condition that defendants consciously disregarded. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). Gant's degenerative joint disease and related pain are a serious medical need. *See Walker v. Benjamin*, 293 F.3d 1030, 1039–40 (7th Cir. 2002).

The issue is whether defendants consciously disregarded that need. Conscious disregard requires that defendants are subjectively aware of that need. *See Cesal*, 851 F.3d at 721. That means that defendants know of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and they actually draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

The Eighth Amendment entitles prisoners to "adequate medical care," that is, "reasonable measures to meet a substantial risk of serious harm." *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). "Evidence that the defendant responded reasonably to the risk, even if he was ultimately unsuccessful in preventing the harm, negates an assertion of [conscious disregard]." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022). The Eighth Amendment doesn't require "specific care" or "the best care possible." *See Johnson*, 433 F.3d at 1013; *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Disagreement between defendants and Gant, or between two medical professionals, about the proper course of treatment isn't enough to show conscious disregard. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

Ignoring a prisoner's request for medical assistance outright can be enough to show conscious disregard of medical needs. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc). If a medical professional has provided some care for a prisoner's condition, she consciously disregards his serious medical need only if her care is so inadequate that it demonstrates an absence of professional judgment, that is, that no minimally competent professional would have responded in that way in the circumstances. *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021); *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998). A prisoner satisfies this standard by showing that the medical professional persists in a course of treatment she knows is ineffective, or chooses an

8

easier and less effective treatment without exercising professional judgment. *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020); *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). Gant must also show defendants' medical care, or lack of it, actually injured him. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020).

1. **Medical care claim against Roethlisberger**

The court must consider the "totality" of a prisoner's care when deciding whether a medical professional has consciously disregarded his serious medical need *Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000). Here, the undisputed evidence shows that Roethlisberger took reasonable measures to treat Gant's knee problems. Roethlisberger prescribed several forms of treatment and took other measures to address those problems. This care included: discussing with Gant the importance of weight loss; ordering a low bunk; prescribing naproxen, ibuprofen, and Tylenol; referring Gant to physical therapy; referring Gant to O'Brien for a steroid injection, and later ordering HSU staff to schedule him for another injection; referring Gant to Lake for a surgical evaluation; and ordering HSU staff to expedite a follow-up visit with Lake for another injection.

The undisputed evidence also shows that Roethlisberger varied her treatment in response to Gant's complaints. In June 2021, Gant reported that his most recent steroid injection helped his knee pain. Roethlisberger believed that Gant was managing his pain and didn't need another injection at that time. But when Gant complained of knee pain and asked for a steroid injection in September 2021, Roethlisberger referred him to O'Brien. After Gant's fall the next month, Roethlisberger ordered O'Brien to evaluate his knee. A month later, Roethlisberger referred Gant to Lake for a surgical evaluation. Gant told Lake that his most recent steroid injection had helped his knee pain greatly, and he received another injection at

9

that visit. In late December 2021, Gant told Roethlisberger that his knee pain improved after Lake's recent injection. Gant's reported satisfaction with his steroid injections belies his contention that the injections were ineffective, much less that Roethlisberger thought that to be the case.

Gant continued to complain of knee pain in January 2022. But there's no evidence that Gant specifically complained that his steroid injection wasn't working. *See* Dkt. 28-1 at 18. The nurse who told Roethlisberger about this complaint asked Roethlisberger if she needed to see Gant again or if another injection could be ordered. *Id.* Roethlisberger referred Gant to Lake for another steroid injection, but there's no evidence that she thought this treatment would be ineffective. In any case, Gant received a new treatment—a Synvisc injection—at his next appointment with Lake in April 2022. Even if Roethlisberger didn't intend that specific outcome, re-referring Gant to Lake didn't result in the same treatment. When Gant complained that his knee didn't respond to the new injection in May 2022, Roethlisberger ordered HSU staff to expedite his next appointment with Lake. Based on Lake's willingness to try a new injection, Roethlisberger had reason to believe that he would consider alternative treatments for Gant's knee pain. There's no evidence that Roethlisberger persisted in a course of treatment that she thought was ineffective.

Gant blames Roethlisberger for delays in his treatment. But Gant doesn't clearly identify any delay that Roethlisberger was responsible for, much less explain how she caused that delay. In any case, it's undisputed that HSU staff doesn't control when a patient can be seen by an offsite specialist. There's no evidence that Roethlisberger intentionally caused, or consciously ignored, any delay in Gant's being seen by a specialist, or in receiving any other necessary treatment.

10

Gant asks me to disregard parts of Roethlisberger's declaration. Gant argues that it's improper for Roethlisberger to discuss records created by other medical professionals because those records are hearsay. But medical records are generally admissible at trial and defendants authenticated their records, so it's appropriate to consider these materials on summary judgment. *See Montoya v. Mitchell*, No. 17-cv-1796, 2024 WL 1328799, at *3 (N.D. Ill. Mar. 28, 2024). Roethlisberger may offer opinions based in part on treatment Gant received from other providers; Federal Rule of Evidence 703 allows her to do that. *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert mas been made aware of or personally observed.").

I will grant defendants' motion for summary judgment on Gant's federal medical care claim against Roethlisberger.

2.  **Medical care claim against Thome**

The evidence shows that Thome didn't ignore Gant's knee problems. Thome saw Gant in late September 2021 after his fall. She examined Gant and advised him to continue using naproxen and acetaminophen as needed and to elevate his leg and use ice as needed. Thome also applied an Ace wrap to Gant's left knee and provided an ice bag. Thome provided adequate treatment for Gant's complaints of minor knee pain.

In mid-October 2021, Thome received two HSRs in which Gant complained of knee pain. Thome didn't ignore these requests. Thome responded that Gant was scheduled to see his provider soon, and Roethlisberger saw him five days later. Gant faults Thome for not providing him with care sooner. Even if Thome could have seen Gant herself, there's no evidence that he required immediate care, let alone that Thome thought that to be the case. Furthermore, there's no evidence that Thome could have provided other treatments. It's

11

undisputed that Thome lacked authority to prescribe medications other than over-the-counter medications. Dkt. 27 ¶ 11; *see Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) (defendants cannot be liable under 42 U.S.C. § 1983 "if the remedial step was not within their power"). If Gant faults Thome for not expediting his appointment with Roethlisberger, it's undisputed that Thome didn't control her schedule. Dkt. 27 ¶ 11. In these circumstances, the five-day delay doesn't show conscious disregard. *Cf. McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[Whether] the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment.").

Later in October, O'Brien asked Thome to contact social services to see if they could help transition Gant's care to the Indianapolis VA. Thome responded that HSU staff would assist in the transition, and there's no evidence that HSU staff failed to do that. Gant wasn't paroled until September 2022, but Thome could not have expedited his release. Thome didn't ignore O'Brien's request.

In a mid-April 2022 HSR, Gant said that the Synvisc injection wasn't effective, complained of serious knee pain, and asked for more effective pain medication. Thome informed Gant that he had an upcoming appointment with Roethlisberger, whom he could talk to about medication. That appointment took place 26 days later but, again, Thome didn't have the power to provide Grant's requested remedy, a new pain medication. Also, Thome didn't control Roethlisberger's schedule.

In any case, Gant can't show that Thome's conduct harmed him. Gant would have to show that if Thome had made greater efforts to ensure that Roethlisberger or another provider saw him sooner, he would have received more effective treatment for his knee pain during the 26-day period. But when Roethlisberger saw Gant in mid-May 2022, she didn't provide any

12

new treatment. Roethlisberger sought to expedite Gant's appointment with Lake, but that visit didn't take place before Gant's release. There is no evidence that Thome's failure to try to expedite Gant's appointment with Roethlisberger in response to the mid-April 2022 HSR harmed him.

## B. State-law medical negligence

Neither party objects to the court's exercise of supplemental jurisdiction over Gant's state-law medical negligence claim, and I will do that here. *See Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 608 (7th Cir. 2008) ("The district court has broad discretion in deciding whether to retain supplemental claims.").[2]

Gant's medical negligence claim fails because he does not have any evidence to establish the standard of care. "Wisconsin law requires that an expert witness testify to establish the standard of care in a medical malpractice case, unless the situation is one where the common knowledge of laymen affords a basis for finding negligence." *Wilson v. Adams*, 901 F.3d 816, 823 (7th Cir. 2018). "Expert testimony was necessary in this case[] because ordinary laymen would not know what medical treatment was necessary based on the symptoms [Gant] presented." *See id.*; *see also Fehrman v. Smirl*, 20 Wis. 2d 1, 22 (1963) (listing obvious cases of medical negligence, such as leaving a sponge inside a patient during surgery or removing the wrong body part). Gant didn't disclose any expert witnesses, so he didn't meet this requirement.

---

[2] I don't have to decide the issue, but Gant's allegations also suggest that his citizenship is completely diverse from defendants' citizenship. *See* Dkt. 1 at 1–2; Dkt. 4 at 8. And it seems likely that Gant could amend his pleading to satisfy the amount in controversy requirement for diversity jurisdiction.

I might not dismiss a medical care claim on summary judgment based on a plaintiff's failure to submit expert medical testimony on the standard of care if there is evidence that a treating physician could establish through trial testimony that the defendant's treatment violated the standard of care. *Taylor v. Murphy*, No. 22-cv-206-jdp, 2024 WL 2864311, at *1 (W.D. Wis. June 6, 2024) (citing *Gil v. Reed*, 381 F.3d 649 (7th Cir. 2004); *Cooper v. Guider*, No. 19-cv-159-jdp, 2020 WL 7642521, at *3 (W.D. Wis. Dec. 23, 2020)). *Gil* and *Taylor* are distinguishable because the plaintiffs disclosed their treating physicians as expert witnesses. The plaintiff in *Cooper* didn't disclose his treating physician as an expert until after summary judgment had been decided, but there was no prejudice because the treating physician was going to trial on a federal medical care claim. That is not the case here.

More significantly, there's no evidence that Roethlisberger or Thome could provide testimony establishing that their treatment violated the standard of care. Roethlisberger says that in her medical and professional opinion, Gant was provided with appropriate medical care for his knee problems. Dkt. 28 ¶ 48. Thome says that she believed that her responses to Gant's HSRs were appropriate, and that she didn't believe that he faced an excessive risk to his health because of his knee problems. Dkt. 27 ¶¶ 42, 45. Gant hasn't identified any evidence that would support a contrary finding.[3]

Gant contends that Roethlisberger's testimony should be struck because defendants didn't disclose their experts on time. Gant is mistaken; defendants disclosed their experts by the extended deadline of March 8, 2024. Dkt. 21 and Dkt. 22. The two-week extension to this

---

[3] I would also consider appointing counsel to obtain expert evidence for an unrepresented party, if there were a realistic chance that counsel could obtain supportive expert testimony. But that's just not the case here.

14

deadline didn't cause Gant any unfair prejudice. Further, Gant contends that defendants didn't provide him with all the discovery that he needed to develop his claims. But the court already denied Gant's motion to compel. Dkt. 37. I will grant summary judgment to defendants on Gant's medical negligence claim.

## ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 23, is GRANTED.
2. The clerk is directed to enter judgment and close the case.

Entered March 25, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge